James Cai (SBN 200189)
Brian A. Barnhorst (SBN 130292)
SAC ATTORNEYS LLP
1754 Technology Drive, Suite 122
San Jose, California 95110
Telephone:  (408) 436-0789

Attorneys for Defendant,
BERTRAND P. LEGRAND

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN M. JONES, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>BERTRAND P. LEGRAND, an individual,<br><br>                         Defendant. | Case Number: 3:20-cv-03688-SK<br><br>**MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT AND REQUEST FOR AWARD OF ATTORNEYS' FEES AND COSTS**<br>**[Cal. Code Civ. Proc. § 425.16; FRCP 12(b)(6)]**<br><br>Date:   August 10, 2020<br>Time:  9:30 a.m.<br>Dept:   Courtroom C, 15th Floor |

# I

# INTRODUCTION

For the reasons set forth below, all of the conduct complained of arose from acts by LEGRAND in furtherance of his rights of petition and free speech under the United States Constitution and the California Constitution, and was based entirely upon communications protected by the anti-SLAPP statute.  For a variety of reasons, Plaintiff cannot carry his burden to establish that there is a probability that he will prevail on any of the claims asserted in the Complaint:

- Defendants' conduct was absolutely privileged pursuant to Civil Code section 47.
- Each of Plaintiff's claims lacks specificity.
- Each cause of action of the Complaint fails to state a claim.
- Plaintiff can produce no evidence to support his claims.

# II

# FACTUAL BACKGROUND

Plaintiff alleges that LEGRAND—both through a request for a temporary restraining order (the "TRO") against Plaintiff and in oral statements made to family members and friends—falsely accused him of having molested two of Plaintiff's daughters, Alaska and Cassandra, when they were children.

Another of Plaintiff's daughters, Icie, married LEGRAND in 2005.  (Complaint at ¶ 5.)  They filed for divorce on March 20, 2019.  (*Id.*)  On or about April 8, 2019, LEGRAND sought a TRO against Plaintiff, accusing him of stalking LEGRAND and alleging that he feared that Plaintiff—having molested two of his own daughters—was a threat to the four young children of Icie and LEGRAND.  (Complaint at ¶ 6.)  Without admitting that his claims were false, LEGRAND withdrew his TRO request on or about October 4, 2019.  (Complaint at ¶ 7.)

Plaintiff also alleges—on information and belief—that, within the past year, LEGRAND made "these statements" to others, including family members, outside the court process.  (Complaint at ¶ 6.)  Plaintiff claims that he discovered this in or about May of 2020.  (Complaint at ¶ 8.)

/ / / / /

/ / / / /

/ / / / /

### III

### <u>APPLICABLE LAW REGARDING ANTI-SLAPP</u>

California Code of Civil Procedure section 425.16 states in relevant part as follows:

> (b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.
> (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
> . . . .
> (c) (1) Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.
> . . . .
> (e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a . . . judicial proceeding, . . . (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . .

Cal. Code Civ. Proc. § 425.16. The statute "is intended to 'provid[e] a fast and inexpensive unmasking and dismissal of SLAPP's.'" *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 16 (1995).

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002), summarizes the analysis on a special motion to strike:

> Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers "the pleadings, and supporting and opposing affidavits, stating the facts upon which the liability or defense is based."

*Equilon*, 29 Cal. 4th at 67.

Under Code of Civil Procedure section 425.16 "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike. . . ." "A cause of action 'arising from' defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike." "Any act" includes communicative conduct such as

the filing, funding, and prosecution of a civil action. This includes qualifying acts committed by attorneys in representing clients in litigation.

*Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006) (citations omitted).

In determining whether a defendant has satisfied its burden under the first prong of the section 425.16 analysis, "the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity.  The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." *Feldman v. 1100 Park Lane Associates*, 160 Cal. App. 4th 1467, 1478 (citations and internal quotation marks omitted).  The statute must be construed broadly to ensure the utmost freedom of access to the courts without the fear of being harassed subsequently by derivative tort actions.  *Id.* at 1479.

> Section 425.16 defines "an act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue," to include statements or writings before a judicial proceeding, or any other official proceeding authorized by law and statements or writings made in connection with an issue under consideration or review by a judicial body.  Thus, **statements, writings, and pleadings in connection with civil litigation are covered by the anti-SLAPP statute,** and that statute does not require any showing that the litigated matter concerns a matter of public interest.  Nor need defendants or cross-defendants bringing an anti-SLAPP motion prove the suit was intended to or actually did chill their speech.

*Feldman*, 160 Cal. App. 4th at 1478 (citations and internal quotation marks omitted; emphasis added).

**IV**

**ARGUMENT**

**A.**     **All of LEGRAND's Conduct Complained of by Plaintiff Is Protected Activity Under the Anti-SLAPP Statute.**

Step one of the Court's analysis is to determine whether Defendants' conduct was "protected activity" under CCP section 425.16.  Here, the anti-SLAPP statute encompasses all of the claims brought by Plaintiff against LEGRAND.

The conduct complained of by Plaintiff comes down to two acts: (1) LEGRAND filed a request for a TRO in which he alleged that Plaintiff had molested two of his own daughters; and (2) LEGRAND allegedly made similar statements to some family and friends.

First, filing a request for a temporary restraining order is protected by the anti-SLAPP statute as a statement or writing as part of a judicial proceeding or made in connection with an issue under consideration or review by a judicial body.  See Cal. Code Civ. Proc. § 425.16(e)(1) and (2). Specifically, the anti-SLAPP statute is applicable to causes of action that result from a defendant's oral or written statements "made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law."  *Martin v. Inland Empire Utilities Agency*, 198 Cal. App. 4th 611, 623 (2011); Code of Civil Procedure § 425.16, subds.(b)(1) & (e).  Here, LEGRAND made his allegedly defamatory statements in a request for a TRO from the San Mateo County Superior Court, which is clearly a judicial body authorized by law.  This conduct is a quintessential activity covered by the anti-SLAPP statute.

Second, the alleged statements that LEGRAND made to family members and friends are covered by the anti-SLAPP statute as "incidental" to the statements made in his request for the TRO, since generic defamatory statements to "friends" are protected as incidental to protected statements. *Comstock v. Aber*, 212 Cal. App. 4th 931 (2012).  The reason for this concept is so "plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one cause of action."  *Id.* at 946, citing *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 308 (2001).  In *Comstock*, the essence of the defamation was the defendant's statements made to a police officer and a nurse, both of which were determined to be protected by the anti-SLAPP statute; when the defendant made the same statements to her friends later, they were considered incidental to the original protected statements. *Comstock*, 212 Cal. App. 4th at 946.

Here, the essence of the alleged defamatory statements is contained in LEGRAND's request for a TRO, which is explicitly protected activity under the anti-SLAPP statute.  LEGRAND's alleged statements later to family members and friends were simply incidental to the prior protected statements.  Therefore, while LEGRAND's alleged statements to family members and friends might have been unprotected speech on their own, they are protected as incidental to his protected statements to the Court.

/ / / / /

**B.** **Once It Has Been Established that a Defendant's Conduct Is Covered by the Anti-SLAPP Statute, the Burden Shifts to Plaintiff to Establish a Reasonable Probability of Prevailing on His Claims.**

Because all of LEGRAND's conduct was "protected activity" under the anti-SLAPP statute, the burden shifts to Plaintiff to make a factual showing of a probability of success on the merits.  See Cal. Code Civ. Proc. § 425.16(b)(1).  California's anti-SLAPP statute provides a burden-shifting mechanism to weed out "lawsuits that 'masquerade as ordinary lawsuits' but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so."  *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003).  Under this standard, the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, "no reasonable jury could find for the plaintiff."  *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 840 (9th Cir. 2001).

Plaintiff bears the burden of proof in seeking to establish his probability of success on the merits but cannot do so, as explained below.

**C.** **Plaintiff Will Be Unable to Establish a Probability of Success on the Merits.**

The second prong of the anti-SLAPP statute requires Plaintiff to properly plead—and to produce competent admissible evidence in support of—each and every essential allegation of the claim, including causation and damages.  *Averill v. Superior Court*, 42 Cal. 4th 1170, 1176 (1996). The issue is whether the cause of action is legally sufficient—i.e., would survive a demurrer (in state court) or motion to dismiss—and is substantiated by competent admissible evidence that, if credited by the trier of fact, would entitle plaintiff to judgment as a matter of law; if he cannot do so, a plaintiff's claims will be dismissed.  *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 823 (1994).

**1.** **First Cause of Action: Defamation (Slander)**

Plaintiff cannot establish that there is a probability he will prevail on his claim for defamation, because the absolute privilege of California Civil Code section 47(b) bars his claim, and because Plaintiff has not alleged specific facts sufficient to state a claim.  Even if Plaintiff had, he cannot support those allegations with competent and admissible evidence.

/ / / / /

/ / / / /

1    a.    The absolute privilege of California Civil Code section 47(b)

2         bars Plaintiff's claim for defamation.

3    First, of course, LEGRAND's request for a TRO is covered by the absolute privilege of

4    California Civil Code section 47(b).

5         A privileged publication or broadcast is one made:
           . . . .
6         (b) In any . . . (2) judicial proceeding, (3) in any other official proceeding
           authorized by law, or (4) in the initiation or course of any other proceeding
7          authorized by law and reviewable pursuant to Chapter 2 (commencing with
           Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . .
8

9    Cal. Civ. Code § 47.

10        This statute has been interpreted as follows: "[Absolute] privilege in judicial
           proceedings is afforded only if the following conditions have been met: the
11         publication (1) was made in a judicial proceeding; (2) had some connection or
           logical relation to the action; (3) was made to achieve the objects of the
12         litigation; and (4) involved litigants or other participants authorized by law."

13   *Twyford v. Twyford*, 63 Cal. App. 3d 916, 925 (1976) (quoting *Bradley v. Hartford Acc. & Indem. Co.*,

14   30 Cal. App. 3d 818, 825 (1973)).

15        Under Civil Code section 47, subdivision 2, a publication made in a
           judicial proceeding is absolutely privileged, i.e., the privilege attaches even
16         though the publication was made with actual malice or with intent to do harm.
           The privilege created by section 47, though part of the statutory law dealing
17         with defamation, has been applied by case law to defeat a variety of tort actions,
           including abuse of process. Accordingly, if the complaint herein shows on its
18         face that the privilege is applicable, the demurrer was properly sustained.

19   *Profile Structures v. Long Beach Bldg. Material Co.*, 181 Cal. App. 3d 437, 441 (1986) (citations omitted).

20        The initiation of a judicial proceeding is quintessentially protected activity under Civil

21   Code section 47.  See, e.g., *Baker v. Littman*, 138 Cal. App. 2d 510, 514 n.1 (1956) (filing of complaint).

22   "In short, the [Civil Code] section 47(b) absolute privilege applies to 'communications intended to

23   instigate official investigation into [suspected] wrongdoing.' . . . Statements made to prompt an

24   official investigation that may result in the initiation of judicial proceedings fall within the

25   [Civil Code] section 47(b) privilege as well."  *Brown v. Department of Corrections*, 132 Cal. App. 4th

26   520, 526 (2005).

27        Section 47, subdivision 2, provides for an absolute privilege with regard to
           statements made "in any . . . official proceeding authorized by law." In our view, a
28         communication concerning possible wrongdoing, made to an official governmental

agency such as a local police department, and which communication is designed to prompt action by that entity, is as much a part of an "official proceeding" as a communication made after an official investigation has commenced. (See *Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48, 55.) After all, "[the] policy underlying the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing." (*Ibid.*) In order for such investigation to be effective, "there must be an open channel of communication by which citizens can call his attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of liability for libel. A qualified privilege is inadequate under the circumstances . . . . [Para.] The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual. Thus the absolute privilege is essential." (*King* v. *Borges* (1972) 28 Cal.App.3d 27, 34.) And, since the privilege provided by section 47, subdivision 2, is absolute, it cannot be defeated by a showing of malice. (*Royer v. Steinberg* (1979) 90 Cal.App.3d 490, 499.)

*Williams v. Taylor*, 129 Cal. App. 3d 745, 753-54 (1982).

Here, LEGRAND filed a petition for a restraining order under penalty of perjury.  His conduct was absolutely privileged under Civil Code section 47.  Plaintiff therefore cannot possibly succeed on his claim for defamation based on the TRO application, and his claim should therefore be stricken.

> b.  Plaintiff has not alleged specific facts sufficient to state a claim
>
> for defamation.

Second, under California law, although a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement.  *Okun v. Superior Court,* 29 Cal. 3d 442, 458 (1981); *Kahn v. Bower,* 232 Cal.App.3d 1599, 1612 (1991).  Even under liberal federal pleading standards, "general allegations of the defamatory statements" which do not identify the substance of what was said are insufficient.  *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) (holding that "the words constituting a libel or slander must be specifically identified, if not plead *verbatim*").  This is because overly vague statements and generalized comments lacking any specificity as to the *time or place* of the alleged conduct may be a further signal there is no factual basis for the accusations. *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1149-50 (2012).

Here, Plaintiff is unable to provide any details whatsoever about the allegedly defamatory and/or slanderous statements; indeed, he alleges only *on information and belief* that they were even

uttered.  He offers only a general description that the allegedly defamatory statements "state directly *or by implication*, …, that Jones is a dangerous person who has committed felonies by molesting two of his daughters and that he is a present threat to his own grandchildren."  Complaint at ¶ 11.  Plaintiff cannot identify what words were stated, to whom they were made, when they were made, who witnessed the statements being made, or where they were made.  Plaintiff provides absolutely no evidence to prove that LEGRAND even made such statements or any documentation of LEGRAND's statements.

Since he fails to specifically identify the words constituting the slander, there is no factual basis for Plaintiff's cause of action of defamation, and Plaintiff cannot establish a probability of succeeding on this cause of action.  The first cause of action should therefore be stricken.

## 2.  Second Cause of Action: False Light Invasion of Privacy

This cause of action fails for the same reasons that the first cause of action fails, as it does not allege sufficient facts to state a claim.  When a false-light claim is coupled with a defamation claim, the false light claim is *essentially superfluous*, and stands or falls on whether it meets the same requirements as the defamation cause of action.  *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1385 (1999).  Therefore, the analysis for the defamation cause of action also applies here. Since Plaintiff fails to specifically identify the words constituting the slander, among many other missing details, Plaintiff cannot establish that there is a probability he will prevail on his claim for defamation and, thus, on his claim for false light invasion of privacy.

Moreover, this cause of action requires more than statements to a few friends and/or family members, as is alleged here.  "Comment (a) to Restatement Second of Torts, section 652D states that 'publicity' 'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'"  CACI 1802 (Directions for Use).

> As discussed in *Briscoe* v. *Reader's Digest Association, Inc*. (1971) 4 Cal.3d 529, 533, the concept of a legal right to privacy was first suggested in a now famous Harvard Law Review article by Warren and Brandeis, *The Right to Privacy* (1890) 4 Harv.L.Rev. 193. While they had difficulty tracing a common law basis for the right, Warren and Brandeis expressed the belief that it was mass exposure to the public gaze and not just backyard gossip which provided the *raison d'etre* for the tort.

Subsequently, in discussing the right of privacy in the area of public disclosure of embarrassing private facts, Prosser stated: "The disclosure of the private facts must be a public disclosure, and not a private one; there must be, in other words, publicity." (Prosser, Torts, *supra*, § 117, p. 810.)

Thus, except in cases involving physical intrusion, the tort must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few. (*Schwartz* v. *Thiele* (1966) 242 Cal.App.2d 799, 805.) "The gravamen of the tort is unwarranted publication of intimate details of plaintiff's private life. (*Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 322-323; *Schwartz* v. *Thiele, supra*, 242 Cal.App.2d at p. 805.)

*Kinsey v. Macur*, 107 Cal. App. 3d 265, 270-71 (1980).

In *Kinsey*, the court had determined that a group of 20 was sufficiently large to constitute "public" disclosure. There, though, defendant had sent defamatory information to a "diverse group of people living in several states and totally unconnected either socially or professionally." *Kinsey*, 107 Cal. App. 3d at 272.[1] In *McTimmonds v. Alcohol & Drug Testing Servs., LLC*, 2014 U.S. Dist. LEXIS 167656 (E.D. Cal. 2014), the court contrasted *Kinsey*, noted that the alleged disclosure before it was to a non-diverse group of plaintiff's coworkers. "Because such disclosure is not 'publicity,' plaintiff fails to allege a plausible claim for public disclosure of private facts, and the court must grant defendant's motion to dismiss that claim." *McTimmonds* at *8.

"[E]xcept in cases involving physical intrusion, the [public disclosure] tort must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few." Schwartz v. Thiele, 242 Cal. App. 2d 799, 805, 51 Cal. Rptr. 767 (1966) (citing Prosser on Torts 835 (3d ed.)). Six co-workers in the waiting room of the testing site do not amount to the "public in general" or a "large number of persons." See Tarlson v. United States, Civ. No. 13-3535, 2014 U.S. Dist. LEXIS 18589, 2014 WL 605489, at *4 (N.D. Cal. Feb. 13, 2014) (holding that "[plaintiff's] claim does not meet the 'mass exposure' standard set out in California, because all those who were aware of Plaintiff's discharge were all professionally connected in the Coast Guard" and thus it was not plausible that

---

[1] "In the instant case, appellant, in her professed attempts to 'tell the whole world what a bastard he is,' sought to reach a large group of people whom she knew had nothing in common except the possible acquaintance of Bill Kinsey. Unlike the state commission in *Porten* or the employer in *Timperley*, recipients of appellant Macur's letters comprised a diverse group of people living in several states and totally unconnected either socially or professionally. Recipients of her letters included the Kinseys, their former spouses, their parents, their neighbors, their parents' neighbors, members of Bill Kinsey's dissertation committee, other faculty and the president of Stanford University. Since this court believes these recipients adequately reflect 'mass exposure' we decline to yield to appellant's claim of insufficient publicity. To do so, we conclude, would only emasculate the legal remedy available to individuals for the invasion of their privacy by another individual. [¶] As the Supreme Court noted: 'Men fear exposure not only to those closest to them; much of the outrage underlying the asserted right to privacy is a reaction to exposure to persons known only through business or other secondary relationships. The claim is not so much one of total secrecy as it is the right to define one's circle of intimacy . . . .' (*Briscoe v. Reader's Digest Association, Inc.*, supra, 4 Cal.3d, p. 534, italics in original.)" *Kinsey*, 107 Cal. App. 3d at 272.

Foster's statements were "communicated to the general public or a diverse group of people completely unconnected").

*McTimmonds* at \*7-8.

Here, Plaintiff has alleged only that LAGRAND made the statements to "others including family members."  Complaint at 3:15-16 (¶12); 4:4 (¶16); 4:9-10 (¶17).  This is insufficient as a matter of law.  Because Plaintiff has not pleaded and cannot establish that the alleged defamation was "published" in the sense required for the tort of False Light Invasion of Privacy, he cannot prevail on the second cause of action, and it should be stricken.

### 3.      Third Cause of Action: Intentional Infliction of Emotional Distress

Finally, Plaintiff has not pleaded and cannot establish facts to prevail on a cause of action for intentional infliction of emotional distress.  A prima facie case for intentional infliction of emotional distress requires properly pleaded allegations of: "'1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'"  *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1259 (2005) (quoting *Trerice v. Blue Cross of America*, 209 Cal. App. 3d 878, 883 (1989).  Plaintiff here has properly pleaded none of these elements.

Plaintiff has not provided any specific facts that LEGRAND made any defamatory statements about him and thus, Plaintiff cannot establish that LEGRAND engaged in extreme and outrageous conduct with the intent to cause emotional distress.  Even if Plaintiff did indeed have evidence that LEGRAND made such statements to LEGRAND'S family members, the intent would have been to alert family members to LEGRAND's possibly dangerous behavior and to protect LEGRAND's four young children, rather than to cause emotional distress to Plaintiff.

Moreover, this cause of action, like the second cause of action, is essentially superfluous since defamation has already been separately pleaded.

/ / / / /

/ / / / /

{SACATTY/138/02/00020262.DOC}                                                                                  3:20-cv-03688
MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT
AND REQUEST FOR AWARD OF ATTORNEYS' FEES AND COSTS

11

1

2

3

4

5

   In *Flynn v. Higham* (1983) 149 Cal.App.3d 677, the same Court of Appeal that decided the instant case considered whether a false publication concerning a deceased person, barred if brought as a libel action, would support a claim for intentional infliction of emotional distress. The court held that "to allow an independent cause of action for the intentional infliction of emotional distress, based on the same acts which would not support a defamation action, would allow plaintiffs to do indirectly what they could not do directly. It would also render meaningless any defense of truth or privilege." (149 Cal.App.3d at p. 682.)

6

*Fellows v. National Enquirer, Inc.*, 42 Cal. 3d 234, 244-45 (1986).

7

   Because Plaintiff has not properly pleaded and cannot prove a viable claim for intentional

8

infliction of emotional distress, he cannot establish a probability he will prevail on his claim for

9

intentional infliction of emotional distress, and his third cause of action should therefore be stricken.

10

## V

11

## **ATTORNEY'S FEES**

12

   The anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike

13

shall be entitled to recover his or her attorney's fees and costs."  Cal. Code Civ. Proc. § 425.16(c)(1).

14

   Counsel for LEGRAND estimates that they have billed or will bill approximately 30 hours on

15

this matter in researching and drafting this special motion to strike, the memorandum, and Mr.

16

Barnhorst's declaration.  Counsel will also need to review and analyze Plaintiff's opposition, prepare a

17

reply in support of the instant motion, and prepare for and attend the hearing on the motion.  Counsel

18

will submit a more final number either in the reply or in a separate fees motion if the Court so requires.

19

   LEGRAND therefore requests an award of attorney's fees of at least $12,000.

20

## VI

21

## **CONCLUSION**

22

   All of the conduct complained of arose from acts by LEGRAND in furtherance of his rights of

23

petition and free speech under the United States Constitution and the California Constitution, and was

24

based entirely upon statements subject to the anti-SLAPP statute.  Plaintiff cannot establish that there

25

is a probability he will prevail on his claim for defamation, or any other claim, because LEGRAND's

26

conduct was absolutely privileged and because Plaintiff fails to specifically identify the words

27

constituting the defamation, or even provide any specific details about when, where, how, and to

28

whom the allegedly defamatory statements were made.  Even if Plaintiff could properly plead his

{SACATTY/138/02/00020262.DOC}                      3:20-cv-03688

MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT
AND REQUEST FOR AWARD OF ATTORNEYS' FEES AND COSTS

12

claims, he cannot support those allegations with competent and admissible evidence.  For all the reasons set forth, this Motion should be granted and Plaintiff's complaint should be stricken.

Dated:  July 14, 2020                                    SAC ATTORNEYS LLP


                                                By: /s/ *Brian A. Barnhorst*
                                                    James Cai, Esq.
                                                    Brian A. Barnhorst, Esq.
                                                    Attorneys for Defendant,
                                                    BERTRAND P. LEGRAND